IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

TIMOTHY GENE MALONE,

      Petitioner,

v.                                                    CASE NO.: 3:24cv668-MMH-MCR

SECRETARY, DEPARTMENT OF
CORRECTIONS, et al.,

      Respondent.

_____/

## **RESPONSE TO PETITION FOR WRIT OF HABEAS CORPUS**

Respondent Secretary Florida Department of Corrections, by and through their undersigned counsel, and pursuant to Rule 5, Rules Governing Section 2254 Cases, and this Court's order (Doc. 10) responds to the petition for writ of habeas corpus (Doc. 10-1) and shows the petition should be denied as follows.

The State addresses this pleading pursuant to *McBride v. Sharpe*, 25 F.3d 962 (11th Cir. 1994), and relies solely upon court records for its factual assertions. Respondent does not concede or waive exhaustion as to all claims presented and asserts all procedural bars and defenses available to them. 28 U.S.C. § 2254(b)(3) ("A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.").

The U.S. district judge nor the U.S. magistrate assigned in this case does not appear to have been involved in any of the state court proceedings.

## **MEMORANDUM OF LAW**

### Procedural History/Timeliness Under the AEDPA [1]

On June 21, 2019, Petitioner was charged in a four count Amended Information, emanating from the Eighth Judicial Circuit in and for Bradford County, Florida, with: Count 1 – Aggravated Battery – Deadly Weapon; Count 2 – Possession of a Concealed Weapon by a Convicted Felon; Count 3 – Grand Theft; and Count 4 – Trespass on Property While Armed. (Ex. A24-25)  As pertinent here, Count 2 alleged a violation of § 790.23(1)(a), Fla. Stat., that Petitioner, a previously convicted felon, "did carry a concealed weapon … to wit: a knife[.]" [2] (Ex. A24-25)

Prior to trial, Petitioner filed a Stand Your Ground ("SYG") motion pursuant to § 776.032, Fla. Stat., seeking immunity from prosecution. (Ex. A27-33)  The state court held a hearing on May 10, 2021,  at which Deputy Dalton Sumner and Petitioner's probation officer testified. (Ex. A349-398)

---

[1] Page references to Exhibits A, I, M and Q are to the record on appeal located at the center bottom of the page. Page references to Exhibit B is to the trial transcript located at the upper right corner of the page. All other references are to the CM/ECF system.

[2] The charge was mislabeled, "possession of a concealed weapon by a convicted felon" but properly cited §790.23(1)(a), Florida Statutes.

Because the subpoenaed victim did not show up at the hearing, it was continued until May 12, 2021, when the victim and Petitioner testified. (Ex. A113-229) In denying the motion, the court found a grant of immunity was improper and the evidence presented at the hearing provided a factual question for a jury. (Ex. A220-225)

On May 18, 2021, Petitioner was tried before a jury. Of the four offenses, a jury convicted Petitioner, as charged in the Information, in Count 2 only, and acquitted him in the remaining counts.[3] (Ex. B452)

The evidence at trial demonstrated as to Count 2 that earlier Petitioner had been in an altercation with a neighbor over a stolen SD card at the Lost Valley Campground, a collection of tents, trailers, and campers without city utilities. (Ex. B190-191; 209) The neighbor, Matthew Pardekooper arrived at the hospital and informed police that Petitioner had hit him over the head with a baseball bat and stole his touchscreen tablet. (Ex. B209; 216-218; 219)

Then, on supervision, Petitioner's probation officer Stephanie Sapp became involved after she was notified that Petitioner's ankle monitor had been cut off and he absconded. (Ex. B127; 255) Petitioner was not at his home. (Ex. B121) Uninvited, Petitioner pushed his way through the flap of Lisa and Scott Mathews' trailer when Lisa opened it. (Ex. B245; 254; 257; 270) Lisa and the

---

[3] After the State rested, Count 3 was reduced to petit theft. (Ex. B280)

baby left in her car to contact police. (Ex. B254; 270-271) Petitioner told Scott that he had a Bowie knife behind his back. (Ex. B255)

Deputy Dalton Sumner found Petitioner inside the camper sitting on a couch under a blanket. (Ex. B141) Taser raised, he ordered Petitioner to lay on the ground outside. He saw a large Bowie knife within his waistband, "underneath his shirt within his belt line". (Ex. B142; 144-145)  He testified that he believes from what he recalls that he possibly recorded the arrest on his bodycam, but that the video recording, if he did, is not available. (Ex. B152-154)

Petitioner testified at trial as to Count 2 that he carried the knife on his right hip tucked under his belt in plain view and his shirttail was in his pants. (Ex. B335-336) He claimed the police had a digital camera in addition to the bodycam. (Ex. B337) The defense asked the jury, in closing argument, to consider "are they [body cam video] not getting downloaded, because everybody's making the same mistake, or maybe they don't want those bodycams to be downloaded and preserved for evidence." (Ex. B413)

Immediately after the verdict, the trial court sentenced Petitioner to fifteen (15) years imprisonment with his sentence running consecutively to his probation violation sentence in Union County case 2009CF201. (Ex. B460)

Petitioner appealed his Judgment and Sentence to the First District Court of Appeal ("First District") in 1D21-1637. An Initial Brief alleged one claim of

trial court error, that the trial court committed fundamental error by adjudicating him guilty and sentencing him for a non-existent crime of possession of a concealed weapon by a convicted felon. (Ex. C) An Answer Brief was filed followed by a Reply Brief. (Exs. D & E)  On November 29, 2022, the First District issued a per curiam opinion affirming the judgment and sentence, and a mandate issued in *Malone v. State*, 350 So.3d 1245 (Fla. 1st DCA 2022)(unpublished). (Ex. F)

Ninety (90) days after the opinion's issuance, Petitioner's judgment and sentence became final for AEDPA purposes on Monday, February 27, 2023. *Nix v. Secretary for Dept. of Corrections*, 393 F. 3d 1235, 1236-1237 (11th Cir. 2004); *Chavers v. Sec'y, Florida Dept. of Corr.*, 468 F.3d 1273, 1275 (11th Cir. 2006)("The entry of judgment, and not the issuance of the mandate, is the event that starts the running of time for seeking Supreme Court review.")

Prior to AEDPA's clock starting, on December 23, 2022, Petitioner filed via the mailbox rule a *pro se* state Petition for Writ of Habeas Corpus, pursuant to Fla. R. App. P. 9.141(d), invoking the First District's original jurisdiction.  He alleged four grounds of ineffective assistance of appellate counsel ("IAAC"), namely that (1) counsel failed to properly represent him on direct appeal, negligently failing to make key points in the Reply Brief; (2) counsel failed to raise Brady violation, namely a video footage of his arrest; (3) counsel failed to appeal a denial of motion to disqualify the trial judge; and (4) counsel failed to

raise a ground of vindictive sentencing. (Ex. G) On December 7, 2023, the First District denied the petition on the merits in *Malone v. State*, 375 So. 3d 396 (Fla. 1st DCA 2023)(unpublished). (Ex. H)

On December 28, 2022, Petitioner submitted via the mailbox rule his Motion for Postconviction Relief pursuant to Fla. R. Crim. P. 3.850 to the trial court, alleging six grounds of ineffective assistance of trial counsel ("IATC"). (Ex. I12-29) The trial court summarily denied the motion. (Ex. I45-134)

Petitioner filed an appeal challenging the trial court's order in the First District in 1D2023-0548. His *pro se* Initial Brief alleged error regarding each of the denied claims. (Ex. J) No other briefs were filed. (Ex. K) The First District issued a per curiam opinion affirming the postconviction order and, on January 4, 2024, a mandate issued in *Malone v. State*, 375 So.3d 262 (Fla. 1st DCA 2024)(unpublished). (Ex. L)

On February 16, 2023, Petitioner filed via the mailbox rule a motion to correct an illegal sentence, pursuant to Fla. R. Crim. P. 3.800(a). In said motion, he claimed his sentence was illegal because he was using the weapon for a lawful purpose under § 790.25, Fla. Stat. (Ex. M12-25) Subsequently, the trial court denied the motion finding the claim was procedurally barred under either Rule 3.800(a) or 3.850. (Ex. M26-38)

Subsequently, Petitioner appealed the order denying relief to the First District in 1D23-0707. (Ex. N) Other than the Initial Brief, no other briefs were

6

filed. (Ex. O)  The First District issued a per curiam opinion affirming the postconviction order and, on January 4, 2024, a mandate issued in *Malone v. State*, 375 So.3d 261 (Fla. 1st DCA 2024)(unpublished). (Ex. P)

On June 21, 2023, Petitioner filed pursuant to Fla. R. Crim. P. 3.800(a) via the mailbox rule another motion to correct an illegal sentence – alleging the court imposed a vindictive sentence and considered impermissible sentencing factors. (Ex. Q12-22) Subsequently, the trial court denied the motion finding that a rule 3.800(a) motion is not the proper method to raise a vindictive sentence claim. (Ex. Q23-26)

Subsequently, Petitioner appealed the order denying relief to the First District in 1D2023-1839. (Ex. R) Other than the Initial Brief, no other briefs were filed. (Ex. S)  The First District issued a per curiam opinion affirming the postconviction order and, on January 4, 2024, a mandate issued in *Malone v. State*, 375 So.3d 262 (Fla. 1st DCA 2024). (Ex. T)

AEDPA's clock started running on January 4, 2024, when the mandate issued and continued running until Petitioner filed his § 2254 petition.  On June 5, 2024, Petitioner filed via the mailbox rule his Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 on AEDPA's 153rd day. (Doc. 1) A Memorandum of Law followed. (Doc. 3)

## DOCTRINES OF EXHAUSTION AND PROCEDURALLY DEFAULT

Before bringing a §2254 habeas action in federal court, a petitioner must exhaust all state court remedies that are available for challenging his state conviction. *See* 28 U.S.C. § 2254(b)(c). To exhaust state remedies, the petitioner must "fairly present" every issue raised in his federal petition to the state's highest court, either on direct appeal or on collateral review. *Castille v. Peoples*, 489 U.S. 346, 351 (emphasis omitted). Thus, to properly exhaust a claim, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).

Furthermore, to be fairly presented, a claim must be presented "in a procedural context in which its merits will . . . be considered." *Castille*, 489 U.S. at 351. Pursuant to the procedural default doctrine, a state prisoner seeking federal habeas corpus relief who fails to raise his federal constitutional claim in state court, or who attempts to raise it in a manner not permitted by state procedural rules, is barred from pursuing the same claim in federal court absent a showing of cause for and actual prejudice from the default, *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977), or the kind of fundamental miscarriage of justice occasioned by a constitutional violation that resulted in the conviction of a defendant who was "actually innocent," as contemplated in *Murray v. Carrier*, 477 U.S. 478, 496 (1986).

8

The "cause" excusing the procedural default must result from some objective factor external to the defense that prevented the prisoner from raising the claim and which cannot be fairly attributable to his own conduct. *Id.,* 477 U.S. at 488. As to the prejudice needed, a petitioner must demonstrate that "the errors at trial actually and substantially disadvantaged his defense so that he was denied fundamental fairness." *See Ward v. Hall*, 592 F.3d 1144, 1157 (11th Cir. 2010). If the petitioner fails to show cause, we need not proceed to the issue of prejudice. *Id.*

## AEDPA'S GENERAL PRINCIPLES GOVERNING §2254 ACTIONS AND INEFFECTIVE ASSISTANCE OF COUNSEL CLAIMS

The AEDPA's amendments to 28 U.S.C. § 2254 limit the federal court's authority to grant relief on a "claim that was adjudicated on the merits in State court proceedings unless" the decision of the state court "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts." *See* 28 U.S.C. § 2254(d); *Ledford v. Warden, Georgia Diagnostic Prison,* 975 F.3d 1145, 1154 (11th Cir. 2020*), cert. denied,* 141 S. Ct. 2832 (2021). A state court's adjudication is "contrary" to federal law only if either the reasoning or the result contradicts the relevant Supreme Court cases. *See Early v. Packer*, 537 U.S. 3, 8 (2002). "A state court

decision involves an unreasonable application of federal law if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.*, citing to *Knight v. Fla. Dep't of Corr.,* 936 F.3d 1322, 1330–1331 (11th Cir. 2019).

AEDPA's Section 2254(d) provides a highly deferential standard for evaluating state-court rulings. "[T]he cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." *Waters v. Thomas*, 46 F.3d 1506, 1511 (11th Cir. 1995) (en banc). The state court's factual findings are generally entitled to a presumption of correctness and may be ignored only if the petitioner shows by clear and convincing evidence that the state court's determination was not fairly supported by the record. *Johnson v. Alabama*, 256 F.3d 1156, 1169 (11th Cir. 2001)(reviewing a pre-AEPDA habeas petition) (citing *Griffin v. Wainwright*, 760 F.2d 1505, 1511 (11th Cir.1985) (quoting pre-AEDPA § 2254(d)).

In *Shinn v. Kayer*, 592 U.S. 111, 118 (2020), the U.S. Supreme Court reiterated the highly deferential standard of review imposed by the AEDPA for evaluating state court rulings on ineffective assistance of counsel claims challenged in federal habeas proceedings. Citing to its earlier decision in *Harrington v. Richter*, 562 U.S. 86, 103 (2011), the U.S. Supreme Court stated that where the State applies the correct governing standard, a petitioner must

show that the state court's decision is "so obviously wrong" that its error lies "beyond any possibility for fair minded disagreement." *Id*. Federal courts may not disturb the judgments of state courts unless "*each* ground supporting the state court decision is examined and found to be unreasonable." *Id*., 141 S. Ct. at 524.

Further still, the reviewing court must conduct a *de novo* review to "determine what arguments or theories ... could have supported the state court's" determination. *Id*.; *Pye v. Warden, Georgia Diagnostic Prison*, 50 F.4th 1025, 1036 (11th Cir. 2022)(Once the state court makes a determination on the performance and prejudice prongs, in order to "give appropriate deference to [the state court's] decision," the district court "in evaluating whether that 'reason [was] reasonable,' *(citation omitted)* [can] consider additional rationales that support the state court's [performance or] prejudice determination.").

Habeas relief is unwarranted where " 'fair minded jurists could disagree' on the correctness of the state court's decision" if based on one of those arguments or theories. "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Richter, 562 U.S.* at 102; *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002)(AEDPA "demands that state-court decisions be given the benefit of the doubt."). An "application of federal law is unreasonable only if no fair minded jurist could agree with the state court's

determination or conclusion." *Id.,* (quoting *Raulerson v. Warden*, 928 F.3d 987, 995–96 (11th Cir. (2019)).

"Under *Strickland*'s familiar two-part test, [a defendant] must show that counsel's performance (1) 'fell below an objective standard of reasonableness' and (2) 'prejudiced the defense.' " *Ledford v. Warden, Georgia Diagnostic Prison,* 975 F.3d 1145, 1158 (11th Cir. 2020), *cert. denied,* 141 S. Ct. 2832 (2021). When reviewing claims, "[c]ourts should at the start presume effectiveness and should always avoid second-guessing with the benefit of hindsight." *White v. Singletary*, 972 F.2d 1218, 1220 (11th Cir.1992). There is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland,* 466 U.S. at 689, *quoting Michel v. Louisiana*, 350 U.S. 91, 101 (1955).

Because there are "countless ways to provide effective assistance in any given case", the petitioner must demonstrate that no competent counsel would take the action his counsel took. *Strickland,* 466 U.S. at 689. A showing that different attorneys might have tried the case differently does not establish ineffectiveness. "Even if many reasonable lawyers would not have done as defense counsel did at trial, no relief can be granted on ineffectiveness grounds

12

unless it is shown that no reasonable lawyer, in the circumstances, would have done so." *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994).

As to the prejudice prong, the petitioner must show that counsel's deficient performance prejudiced the defense, so that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland,* 466 U.S. at 694. The likelihood of a different result must be "substantial, not just conceivable." *Richter*, 562 U.S. at 112.

"The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so". *Richter*, 562 U.S. at 106. Hence, under federal habeas, a "doubly deferential judicial review ... applies to a *Strickland* claim evaluated under the s. 2254(d)(1) standard[.]" *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009), *citing Yarborough v. Gentry*, 540 U.S. 1, 5-6 (2003). Because "double deference is doubly difficult for a petitioner to overcome, and it will be a rare case in which an ineffective assistance of counsel claim that was denied on the merits in state court is found to merit relief in a federal habeas proceeding." *Downs v. Sec'y, Fla. Dep't. of Corr.,* 738 F.3d 240, 258 (11th Cir. 2013)(internal quotation marks omitted).  The instant case is not such a rare case.

## **CLAIM ONE**

PETITIONER    WAS    CONVICTED    AND
SENTENCED  FOR  THE  NON-EXISTENT  CRIME
OF 'POSSESSION OF A CONCEALED WEAPON BY
A CONVICTED FELON'.

PETITIONER'S ALLEGATIONS

Petitioner alleges at Claim One in his § 2254 petition that he was

convicted and sentenced for felon in possession of a concealed weapon, a non-

existent offense, rather than felon carrying a concealed weapon. (Doc. 10-1 at

6)  In his Memorandum, he argues that the trial court erred because possession

of a concealed weapon is not a crime under § 790.23, Fla. Stat. He alleges that

although counsel raised this issue on appeal, counsel failed to adequately argue

it in her brief. He states appellate counsel failed to argue during briefing that

the jury was instructed on the meaning of care and custody, reserved for

possession cases, and that the State referred to possession in its closing

argument. (Doc. 3 at 2-4) He further asserts that the trial court's ruling in his

IATC claim was erroneous. (Doc. 3 at 4-5)

No Federal Question.

Claim One of the petition raised only a state law claim.  The purpose of

federal habeas relief is to review state court judgment and sentences for

violations of federal constitutional and statutory law. A petition for federal

habeas review must seek relief "only on the grounds that he is in custody in

violation of the Constitution or law or treaties of the United States. *See* 28 U.S.C. § 2254(a).

Petitioner cites to no U.S. Supreme Court precedent at Claim One that the state court decision allegedly violates to present a federal question. *Williams v. Taylor,* 529 U.S. 362, 412, (2000). Without such an allegation at Claim One, he states only a state law claim, that the state court committed error, for which habeas relief is not available. *Pinkney v. Sec'y, DOC,* 876 F.3d 1290, 1299 (11th Cir. 2017).

To be sure, federal habeas relief is not available to correct errors of state constitutional, statutory or procedural law. *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991). Rather, the purpose of a federal habeas proceeding is review of the lawfulness of Petitioner's custody to determine whether that custody is in violation of the Constitution or laws and treaties of the United States. *See Coleman v. Thompson*, 501 U.S. 722 (1991). Because this Court lacks the ability to consider the state law claim raised at Claim One, Claim One should be denied.

Exhaustion.

Petitioner failed to fairly present and exhaust the federal nature of this claim in the state courts prior to filing his § 2254 petition.[4] Under our federalist

---

[4] While Petitioner alleges he raised this claim in his 3.850 motion and 9.141 petition, Respondent notes he raised different claims. (Doc. 1 at 6) Ground 5

system, state courts must be given the " 'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights" prior to federal court review. *Picard v. Connor,* 404 U.S. 270, 275 (1971). To exhaust the federal nature of the claim, the petition must "fairly present" his claim in each appropriate state court to alert that court to the claim's federal nature. *Pearson v. Sec'y, Dept. of Corr.*, 273 F. App'x 847, 849-50 (11th Cir. 2008)("[t]he exhaustion doctrine requires the petitioner to 'fairly present' his federal claims to the state courts in a manner to alert them that the ruling under review violated a federal constitutional right."). Petitioner failed to do this.

The U.S. Supreme Court, in dicta, suggested that a petitioner can "indicate the federal basis for his claim" by citing the federal source of law in conjunction with the state law claim, citing a case deciding such a claim on federal grounds, or simply labeling the claim as "federal." *Baldwin v. Reese*, 541 U.S. 27, 32 *See Baldwin*, 541 U.S. 27, 32 (2004). However, the Eleventh Circuit has employed a "common sense" approach. *McNair v. Campbell,* 416 F3d. 1291, 1303 (11th Cir. 2005). Under its approach, generic references to

---

of his 3.850 motion alleged an IATC claim that counsel failed to object to the jury instructions at Count 2 (Ex. I23-24) which is different than the claim he raises here. As to his 9.141 petition, he only claimed that appellate counsel should have **better argued** his state claim in her Reply Brief, not that she failed to federalize his claim. (Ex. G5-10)

U.S. Constitution provisions, devoid of any citation to U.S. Supreme Court precedent, are insufficient to "fairly present" a federal issue. *McNair,* 416 F3d. at 1303-1304 (11th Cir. 2005)(a citation to a single federal case in a string of cases, and a passing reference in the conclusion of an argument to various amendments of the Constitution did not fairly present the federal issue to the state court, barring federal habeas review for lack of exhaustion in the state courts.).

Petitioner does not even satisfy the low standard in *Baldwin*'s dicta. Nowhere in his Amended Initial Brief on appeal alleging he was convicted of a non-existent crime under state law does he cite to any federal law, whether United States Supreme Court precedent, a federal constitution provision, or otherwise. (Ex. C) Instead, Petitioner relies solely in his Amended Initial Brief on state law cases, alleging fundamental error, a state concept. (Ex. C); *Preston v. Sec'y, Fla. Dep't of Corr.*, 785 F.3d 449, 457–58 (11th Cir. 2015) (holding that a habeas petitioner failed to exhaust his sufficiency of the evidence claim because he did not cite to any federal cases or federal constitutional provisions and only relied upon Florida case law to argue his claim).

Merely raising "an analogous state law claim" and "simply mentioning a phrase common to both state and federal law, like 'sufficiency of the evidence,' cannot constitute fairly presenting a federal claim to the state courts." *Id.,* 785 F.3d at 457; *Anderson v. Harless,* 459 U.S. 4, 6, (1982) (As the Supreme Court

has explained for exhaustion purposes, "[i]t is not enough that ... a *somewhat similar* state-law claim was made.").

Just like errors of state law, errors of a federal constitutional dimension should be preserved in the trial court and then raised in the direct appeal of the judgment and sentence. Because Petitioner did not preserve a federal issue in the state trial court and challenge its denial to the First District in his initial brief, Petitioner is now procedurally barred from returning to the state court to assert a federal constitutional basis for his claim. *See* Fla. R. App. P. 9.140 ("The defendant shall file the notice prescribed by rule 9.110(d) with the clerk of the lower tribunal at any time between rendition of a final judgment and 30 days following rendition of a written order imposing sentence."); *Collier v. Jones,* 910 F.2d 770, 772 (11th Cir.1990)("[W]hen a petitioner has failed to present a claim to the state courts and under state procedural rules the claim has become procedurally defaulted, the claim will be considered procedurally defaulted in federal court.").

Petitioner also had failed to show that "cause" and "actual prejudice"[5] to overcome the procedural default bar under *Wainwright v. Sykes*, 433 U.S.

---

[5] Here, despite the mislabeled title/caption for the charge, the Information alleged a violation of 790.23, Fla. Stat., stating the elements of felon carrying a concealed weapon and the jury was properly instructed on the elements they need to consider to find Petitioner guilty of Count 2. (Ex. A24-25; 61-62) At the

72, 87 (1977), or the kind of fundamental miscarriage of justice occasioned by a constitutional violation that resulted in the conviction of a defendant who was "actually innocent," as contemplated in *Murray v. Carrier*, 477 U.S. 478, 496 (1986).

Unexhausted and procedurally barred, Claim One should be denied.

## CLAIM TWO

PETITIONER WAS EXEMPT FROM PROSECUTION OF THE ALLEGED CRIME PURSUANT TO FLORIDA STATUTE § 790.25 PETITIONER'S ALLEGATIONS.

PETITIONER'S ALLEGATIONS.

Petitioner alleges at Claim Two of his § 2254 petition that the State should not have prosecuted him for carrying a concealed weapon when he "was at his home in a campground at the time" and had the weapon to defend himself. He asserts § 790.25 does not prohibit the lawful use of weapons in defense of life, home and property. (Doc. 10-1 at 7)  He states, in his Memorandum, "[u]nder these circumstances the Petitioner was entitled to bear arms and according to the Declaration Policy of Section §790.25 and

---

charge conference, defense counsel and the court had a brief exchange on the mislabeling in Count 2, in which the trial court remarked, that "I don't know that the title matters". (Ex. B370)

its construction and also the Second Amendment to the U.S. Constitution the Petitioner committed  no crime." (Doc. 3 at 5-7)

<u>Exhaustion</u>.

Petitioner states he exhausted his state remedies by raising the claim in his 3.800(a) motion and followed up in an appeal. (Doc. 1 at 8) Nonetheless, he failed to properly exhaust his state remedies with regard to Claim Two using the proper procedural context to obtain a ruling on the merits. To properly exhaust state remedies, the habeas petitioner must raise the nature of his federal claim "in a procedural context in which its merits will . . . be considered." *Castille*, 489 U.S. at 351. While Petitioner tried to bring the claim before the state court in a 3.800(a) motion, this was not the correct procedural remedy. In said motion, he claimed his sentence was illegal because he was using the weapon for a lawful purpose under § 790.25, Fla. Stat. (Ex. M12-25) Subsequently, the trial court denied the motion finding that a Rule 3.800(a) motion was an improper method to raise the issue when the claim challenged the conviction. Further, the court found that the claim could be raised in a 3.850 motion because the claim was procedurally barred since it should have been raised on direct appeal. (Ex. M26-38)

Petitioner was obligated to raise the issue on direct appeal of the judgment and conviction (if preserved in the trial court),[6] or in a 3.850 postconviction motion, if styled as an ineffective of trial counsel claim. In Florida, defendants are generally entitled to one direct appeal and one 3.850 motion. *See* Fla. R. App. P. 9.140(e); Fla. R. Crim. P. 3.850(b).

Because Petitioner failed to raise the claim in the state courts, Petitioner is now procedurally barred from returning to the state court to assert a federal constitutional basis for his claim. *See Collier v. Jones,* 910 F.2d 770, 772 (11th Cir.1990)("[W]hen a petitioner has failed to present a claim to the state courts and under state procedural rules the claim has become procedurally defaulted, the claim will be considered procedurally defaulted in federal court.").

Unexhausted and procedurally barred, Claim Two should be denied.

## CLAIM THREE

## BRADY VIOLATION

PETITIONER'S ALLEGATIONS.

Petitioner alleges at Claim Three of his § 2254 petition that the State withheld Brady[7] evidence in failing to provide the defense with the body

---

[6] Notably, he did not raise this claim as an IAAC claim in his 9.141 petition. (Ex. G)

[7] *Brady v. Maryland*, 373 U.S. 83 (1963).

camera video of Petitioner's arrest. (Doc. 10-1 at 8-9) In his Memorandum, he states that on November 13, 2019, the trial court directed the State to produce the video or that "the State would bear the burden of explaining [its absence at trial] to the jury." (Doc. 3 at 8)  He states also that counsel filed motions to compel the video, stating that "the video will show that the Defendant did not conceal the knife as he was charged".  He states that "the trial judge did not honor his prior colleague's ruling [sanctioning the State] and the State did not explain to the jury that there was valuable, possibly exonerating evidence that they were responsible for losing."  He argues that "all of the points of *Brady v. Maryland* had been established" and "his Due Process rights were trampled on by" the Florida courts. (Doc. 3 at 8)

Exhaustion.

Petitioner failed to exhaust his state remedies as to Claim Three prior to filing his § 2254 petition because he failed to raise the substantive claim in the proper procedural context.  For a claim to be exhausted, the claim must be presented "in a procedural context in which its merits will . . . be considered." *Castille*, 489 U.S. at 351.  He states that he exhausted this claim in his 3.850 motion, however, at Claim Three of his §2254 petition, he argues trial court errors pertaining to its Brady rulings, not IATC. (Doc 10-1 at 9)

 The record shows that the *Brady* issue first arose on November 13, 2019 when Petitioner's prior attorney moved for the video referenced in the police

report to be supplied to the defense.  Deputy Sumner's report, disclosed in the discovery, referred to "some video footage of this incident" to be "downloaded and added to the case file". (Ex. A15; I31)  The court recognized that police reports are not always 100 percent accurate (Ex. I38) before directing the State "to respond to its responsibility by Friday, noon, to file a statement whether there is or is not video." (Ex. I39-40)

The missing body cam was considered a misstatement in the police report (Ex. A118) until defense counsel next raised the missing body cam video issue at the SYG hearing, on May 12, 2021, after Deputy Sumner's testimony the day prior. (Ex. A115-116)  On May 15, 2021, Petitioner filed a motion to compel discovery seeking the video footage. (Ex. A40-41)

Prior to jury selection on May 18, 2021, the State explained to the trial court that after consulting the IT department at the Sheriff's Office, they determined that "no such video – if it existed – no such video is no longer there." The State explained that just about the time of Petitioner's arrest three years ago, the Sheriff instituted the body camera policy and had many "kinks to work out and a lot of things did not download". (Ex. A101-102)

After the State rested at trial, the defense renewed its prior objections and moved to dismiss Ground 2 "as a result of *Brady* violation, *Giglio* violation, in that Deputy Sumner failed to preserve the bodycam evidence that **potentially** had exculpatory information." (bolded evidenced added) (Ex. B278) He also

renewed his objections at the close of the evidence. (Ex. B369) A review of the Initial Brief in direct appeal 1D21-1637 indicates Petitioner failed to raise the issue. (Ex. F)

Because the facts surrounding the *Brady* issue were known at the time of trial, Petitioner was obligated to raise the claim in his direct appeal, the correct procedural device, rather than a 3.850 motion. A 3.850 motion should not be used as a substitute for direct appeal. *McCrae v. State,* 437 So. 2d 1388, 1390 (Fla. 1983); *Thompson v. State*, 759 So. 2d 650, 662 (Fla. 2000)(recognizing that where the facts supporting a Brady claim are known at trial, the claim must be raised on direct appeal).

Because Petitioner cannot return to the First District to pursue a second direct appeal to exhaust his state remedies, Claim Three is now procedurally barred from review in this Court. *See* Fla. R. App. P. 9.140 ("The defendant shall file the notice prescribed by rule 9.110(d) with the clerk of the lower tribunal at any time between rendition of a final judgment and 30 days following rendition of a written order imposing sentence."); *Collier v. Jones,* 910 F.2d 770, 772 (11th Cir.1990)("[W]hen a petitioner has failed to present a claim to the state courts and under state procedural rules the claim has become procedurally defaulted, the claim will be considered procedurally defaulted in federal court.").

Petitioner also had failed to show that "cause" and "actual prejudice" to overcome the procedural default bar under *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977).    Notwithstanding, his IAAC claim raised at ground two in his 9.141 petition in the First District, alleging appellate counsel was ineffective for failing to raise a Brady claim on direct appeal, may constitute "cause" to overcome the procedural bar. *Sealey v. Warden, Georgia Diagnostic Prison,* 954 F.3d 1338, 1365 (11th Cir. 2020)(IAAC can be "cause" if it occurred during the state of the proceedings when he had a constitutional right to counsel and was itself exhausted and not otherwise procedurally barred). (Ex. G10-21) Before ineffective assistance of counsel may serve as "cause" for a procedural default, the petitioner must be able to satisfy the two elements of the *Strickland* analysis. *Brownlee v. Haley,* 306 F.3d 1043, 1066 (11th Cir. 2002). Thus, if Petitioner "cannot prevail on a separate ineffective assistance of counsel claim, then he cannot prevail on an argument that ineffective assistance caused the procedural default." *Id.*

Petitioner cannot overcome the procedural bar since he has not demonstrated appellate counsel was constitutionally deficient in that she made "errors or omissions of such magnitude that fell outside the range of professionally acceptable performance, and 2) the integrity of the appellate process is compromised and confidence in the correctness of the result is

undermined." *See Johnson v. Wainwright,* 463 So.2d 207, 209 (Fla.1985) (citing *Strickland v. Washington,* 466 U.S. 668, (1984)).

Appellate counsel's letter, dated February 23, 2022, memorializes her strategy in foregoing the Brady claim to assert more meritorious grounds for direct appeal. (Ex. G37-39) She explained that the caselaw, particularly *Arizona v. Youngblood*, 488 U.S. 51 (1988), and the facts were not on their side. The defense could not show bad faith, that the body cam video was willfully suppressed, when it was referenced in the police report and was only "potentially exculpatory" since "no one could testify to what the video actually showed." (Ex. G38) Its contents was mere "speculation". (Ex. G35) She explained that the loss of the body cam video "could be portrayed as an unfortunate mistake" (Ex. G35) because the police had just instituted the body cam policy when Deputy Sumner arrested Petitioner. (Ex. A101-102) "Effective advocates 'winnow out' weaker arguments even though the weaker arguments may be meritorious." *See Heath v. Jones,* 941 F.2d 1126, 1130-31 (11th Cir.1991). Failing to brief or argue a non-meritorious issue is not ineffective assistance of appellate counsel. *King v. Dugger,* 555 So.2d 355 (Fla.1990); *Suarez v. Dugger,* 527 So.2d 190 (Fla.1988).

Unexhausted and procedurally barred, Claim Three should be denied.

## CLAIM FOUR

## GIGLIO VIOLATIONS

PETITIONER'S ALLEGATIONS.

Petitioner alleges at Ground Four of his petition that the State suborned perjury when Deputy Dalton Sumner testified about the body cam video recording of Petitioner's arrest. (Doc. 10-1 at 10-11) Specifically, he claims Deputy Sumner lied at his SYG hearing after he testified at Petitioner's prior probation violation hearing in Union County 2009-CF-201 that he videotaped Petitioner's arrest, "added it to the case file, and was surprised it was now missing". (Doc. 3 at 9)

<u>Exhaustion.</u>

Petitioner failed to exhaust his state remedies regarding his substantive *Giglio* claim prior to filing his § 2254 petition. He stated he raised the claim in his 3.850 motion and his appeal to the First District. (Doc. 10-1 at 10) Because the *Giglio* claim was raised during trial and the facts supporting the claim were known at the time of trial, he was obligated to raise it in his direct appeal. *Johnson v. State,* 128 So. 3d 155, 156 (Fla. 2d DCA 2013)*(Giglio* claims may be cognizable in a postconviction motion when the issue *has not* been raised on direct appeal). A 3.850 motion should not be used as a substitute for direct appeal. *McCrae v. State,* 437 So. 2d 1388, 1390 (Fla. 1983).

27

The record shows that Petitioner was represented by the same defense counsel in both cases. At the VOP hearing, held on March 22, 2021, Deputy Sumner testified in an exchange with defense counsel on cross-examination as to the missing video as follows:

> Q. What happened to the videotape made of Mr. Malone's arrest that was described in the police report?
> A. I **believe** it was entered into evidence.
> Q. Did you do that?
> A. Yes, sir, I **believe** so.
> A. Should be, yes, sir.
> Q. Are you aware that its' not there?
> A. No, sir.

(Ex. U14-15)(bold emphasis added)

On May 10, 2021, Deputy Sumner testified at the SYG hearing that if there was bodycam video, it should be in evidence and if not, he would have "no idea" why. (Ex. A374)  Upon counsel showing him his report, he offered that body cameras were just assigned and that he did not have an explanation why it was not downloaded. (Ex. A375) He acknowledged that if he testified at the March 22, 2021 violation hearing that he placed the video into evidence, the testimony would have been incorrect. (Ex. A376-7)

On May 18, 2021, Deputy Sumner testified at trial that he believes from what he recalls that he possibly recorded the arrest on his bodycam, but that the video recording, if he did, is not available.  (Ex. B152-154) He testified that when he returned to the office, he would have downloaded the video onto a

28

DVD and submitted it as evidence. (Ex. B153)  He testified that he did not do anything deliberately to lose the video. (Ex. B154)

A review of the Initial Brief in 1D21-1637 indicates Petitioner failed to raise the issue.[8] (Ex. C) Having failed to raise it in the proper forum to have his claim adjudicated on the merits, Claim Four of this § 2254 petition is unexhausted.

Because Petitioner cannot return to the state courts to raise the claim in a second direct appeal, the claim is forever procedurally barred.  *See* Fla. R. App. P. 9.140 ("The defendant shall file the notice prescribed by rule 9.110(d) with the clerk of the lower tribunal at any time between rendition of a final judgment and 30 days following rendition of a written order imposing sentence."); *Collier v. Jones,* 910 F.2d 770, 772 (11th Cir.1990)("[W]hen a petitioner has failed to present a claim to the state courts and under state procedural rules the claim has become procedurally defaulted, the claim will be considered procedurally defaulted in federal court.").

Unexhausted and procedurally barred, Claim Four should be denied.

---

[8] Notably, his 9.141 petition also did not include a claim that appellate counsel was deficient in failing to raise this issue in his direct appeal.  (Ex. G)

## CLAIM FIVE

### VINDICTIVE SENTENCING

PETITIONER'S ALLEGATIONS.

Petitioner alleges at Ground Five of his § 2254 petition that the sentencing judge imposed a vindictive 15 year sentence when he originally rejected a 10 year plea offer and he was acquitted on 3 of the 4 charges. He offered that at the May 10, 2021, the trial judge advocated for the plea deal, indicating "future procedural decisions" hinged on Petitioner's decision to proceed to trial. (Doc. 10-1 at 11). He states that he raised Claim Five in his 3.850 motion, and state 9.141(d) petition. (*Id.* at 11-12)

Exhaustion.

Petitioner did not exhaust his substantive vindictive sentencing claim using the proper procedural method to obtain a ruling on the issue prior to filing his § 2254 petition. *Castille*, 489 U.S. at 351. Contrary to his assertions, Petitioner did not raise a vindictive sentencing claim in his 3.850 motion, as he avers in his habeas petition. (Ex. I12-26) Moreover, because such a claim would appear *on the face of the record,* imposition of a vindictive sentence is fundamental error that may be raised for the first time on appeal. *Baxter v. State,* 127 So. 3d 726, 732 (Fla. 1st DCA 2013)(emphasis added).

A review of his amended Initial Brief in 1D21-1637 demonstrates that he did not raise the issue in the proper procedural context. (Ex. C) Because

Petitioner cannot return to state court to pursue a second direct appeal, this claim is procedurally barred. *See* Fla. R. App. P. 9.140 ("The defendant shall file the notice prescribed by rule 9.110(d) with the clerk of the lower tribunal at any time between rendition of a final judgment and 30 days following rendition of a written order imposing sentence."); *Collier v. Jones,* 910 F.2d 770, 772 (11th Cir.1990)("[W]hen a petitioner has failed to present a claim to the state courts and under state procedural rules the claim has become procedurally defaulted, the claim will be considered procedurally defaulted in federal court.").

Petitioner also had failed to show that "cause" and "actual prejudice" to overcome the procedural default bar under *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977).    Notwithstanding, his IAAC claim raised at ground four in his 9.141 petition in the First District, alleging appellate counsel was ineffective for failing to raise the vindictive sentence ground on direct appeal, may constitute "cause" to overcome the procedural bar. *Sealey v. Warden, Georgia Diagnostic Prison,* 954 F.3d 1338, 1365 (11th Cir. 2020)(IAAC can be "cause" if it occurred during the state of the proceedings when he had a constitutional right to counsel  and was itself exhausted and not otherwise procedurally barred).  Before ineffective assistance of counsel may serve as "cause" for a procedural default, the petitioner must be able to satisfy the two elements of the *Strickland* analysis. *Brownlee v. Haley,* 306 F.3d 1043, 1066 (11th

Cir.2002). Thus, if Petitioner "cannot prevail on a separate ineffective assistance of counsel claim, then he cannot prevail on an argument that ineffective assistance caused the procedural default." *Id.*

Petitioner cannot overcome the procedural bar since he has not demonstrated appellate counsel was constitutionally deficient in that she made "errors or omissions of such magnitude that fell outside the range of professionally acceptable performance, and 2) the integrity of the appellate process is compromised and confidence in the correctness of the result is undermined." *See Johnson v. Wainwright,* 463 So.2d 207, 209 (Fla.1985) (citing *Strickland v. Washington,* 466 U.S. 668, (1984)).

The record shows that prior to the Stand Your Ground hearing, the trial court did not participate in plea negotiations so as to have to explain for the record his reasons for imposing a greater sentence after a trial. *Prado v. State,* 816 So.2d 1155, 1157 (Fla. 3d DCA) (holding on direct appeal that a presumption of vindictiveness arises when a trial judge who has participated in plea negotiations imposes a sentence in excess of what the state offered).

In the preceding section Petitioner cites, the trial judge did not engage in the plea bargain process and he neither urged Petitioner to accept nor reject the plea bargain.[9]

---

[9]    Petitioner did not receive a vindictive sentence. According to the Judgment and Sentence, the trial court imposed a 15 year sentence, only 5 years more,

THE COURT: The first thing -- let's just put on the record is there was a -- my understanding is an offer tendered from the State to Mr. Malone today that was a today-only offer and something for his consideration prior to the hearing. It was to enter a plea as charged for 10 years Department of Corrections, not as a prison releasee reoffender. So it wouldn't be a mandatory minimum day-for-day sentence, but one for which he would be eligible to earn gain time on potentially. That sentence would run consecutive to a 14-year sentence received in the violation of probation case out of Gilchrist County, and that would close these matters out.

Mr. Ruppert, did you have a chance to discuss that offer with Mr. Malone?

MR. RUPPERT: I did, Your Honor.

(Ex. A351)

It was Petitioner's trial counsel that continued with the questioning for the record, first raising the habitual offender (HO) enhancement (which the State never filed), and the court interjected only to ensure Petitioner's understood the plea offer and implications if he lost at trial.  (Ex. A351-353).  The trial judge was neutral throughout and memorialized the State's offer for the record and ensured for the record Petitioner had sufficient time with his attorney to consider it and that Petitioner understood the offer he rejected.  *Singleton v. State*, 860 So. 2d 1017 (Fla. 3d DCA 2003)(rejecting vindictive sentencing claim

---

without the PRR enhancement that would require Petitioner to serve the entire 15 year term day-for day. See § 775.082(9)(b), Fla. Stat. (Ex. A82-85; B460)

where court conducted colloquy of defendant to verify that defendant understood the State's offer, that defendant understood maximum penalties and that defendant had decided to reject it.); *Snow v. Crosby,* 851 So. 2d 222, 223 (Fla. 3d DCA 2003)(rejecting IAAC claim for failure to raise vindictive sentencing when trial court conducted colloquy with defendant regarding State's plea offer).

Unexhausted and procedurally defaulted, Claim Five should be denied.

## CONCLUSION

For the foregoing reasons, Respondent respectfully submits that the petition for a writ of habeas corpus should be denied, without any evidentiary hearing.

Respectfully submitted,

JAMES UTHMEIER
ATTORNEY GENERAL

/s/ Holly N. Simcox
Holly N. Simcox
Assistant Attorney General
Florida Bar No. 056952
Office of the Attorney General
PL-01, the Capitol
Tallahassee, Florida 32399-1050
Holly.Simcox@myfloridalegal.com
Crimapptlh@myfloridalegal.com
(850) 414-3300 (Telephone)
(850) 922-6674 (Fax)
COUNSEL FOR RESPONDENT
[AGO# L24-1-08494]

<u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that I electronically filed the foregoing Response

with the Clerk of Court by using the CM/ECF system on March 17, 2025, and

a true and correct copy will be furnished to non-CM/ECF participant: Timothy

G. Malone DC# G18882, Blackwater River Correctional Facility, 5914 Jeff Ates

Road, Milton, Florida 32583, on March 18, 2025, the next business day.

<u>/s/ Holly N. Simcox</u>
Holly N. Simcox
Assistant Attorney General

IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

TIMOTHY GENE MALONE,

        Petitioner,

v.                                   CASE NO.: 3:24cv668-MMH-MCR

SECRETARY, DEPARTMENT OF
CORRECTIONS, et al.,

        Respondent.

_____/

## INDEX TO EXHIBITS

A1.  Record on (Direct) Appeal in First District Court of Appeal 1D21-1637

A2.  Supplemental Record on (Direct) Appeal in First District Court of Appeal 1D21-1637

B.    Trial Transcript (excluding jury selection) in Bradford County Case 2018CF000246

C.    Appellant's Amended Initial Brief in First District Court of Appeal 1D21-1637

D.    Appellee's Answer Brief in First District Court of Appeal 1D21-1637

E.    Appellant's Reply Brief in First District Court of Appeal 1D21-1637

F.    Mandate & Opinion in First District Court of Appeal 1D21-1637

G.    Petition for Writ of Habeas Corpus Alleging Ineffective Assistance of Appellate Counsel in First District Court of Appeal 1D23-0016

H.    Order Denying Petition for Writ of Habeas Corpus Alleging Ineffective Assistance of Appellate Counsel in First District Court of Appeal 1D23-0016

I.    Record on (Corrected 3.850) Appeal in First District Court of Appeal 1D23-0548

J.    Appellant's Initial Brief in First District Court of Appeal 1D23-0548

K.    Online Docket in First District Court of Appeal 1D23-0548

L.    Mandate & Opinion in First District Court of Appeal 1D23-0548

M.   Record on (3.800) Appeal in First District Court of Appeal 1D23-0707

N.    Appellant's Initial Brief in First District Court of Appeal 1D23-0707

O.    Online Docket in First District Court of Appeal 1D23-0707

P.    Mandate & Opinion in First District Court of Appeal 1D23-0707
Q.    Record on (3.800) Appeal in First District Court of Appeal 1D23-1839
R.    Appellant's Initial Brief in First District Court of Appeal 1D23-1839
S.    Online Docket in First District Court of Appeal 1D23-1839
T.    Mandate & Opinion in First District Court of Appeal 1D23-1839
U.    Excerpt from VOP Sentencing in Union County 2009CF000201